**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO: 11-CIV-24611-SEITZ

SURVIVOR, by and through Isidro Reyes and
Ana Reyes, parents and next friends, *et al.*,

            Plaintiffs,

vs.

OUR KIDS OF MIAMI-DADE/MONROE, INC.,
*et al.*,
            Defendants.
_____/

## ORDER HOLDING THE FLORIDA DEPARTMENT
## OF CHILDREN AND FAMILIES IN CONTEMPT

THIS CAUSE came before the Court pursuant to a show cause hearing on Plaintiffs'

motion to hold the Florida Department of Children and Families (DCF) in contempt for violation

of the Court's Order sealing the Report of Guardian ad Litem Regarding Partial Settlement. The

record evidence is clear and convincing that DCF violated a valid, lawful, clear, and

unambiguous Court Order, with which DCF had the ability to comply. DCF has not established

the impossibility of compliance. Therefore, having carefully considered the evidence and the

law, the Court hereby holds DCF in contempt.

This case involves shocking official negligence which facilitated a child's tragic death

and the severe abuse of her and her siblings. The Guardian ad Litem's Report ("GAL Report") at

issue was prepared at the Court's behest to ensure that the settlement between Plaintiffs and

DCF's private contractors was reasonably sufficient to meet the surviving children's life-long

treatment needs. The GAL Report therefore contained sensitive information—including the

proposed settlement sum—which the Court and Plaintiffs sought to maintain sealed in order to

prevent re-victimization of the minors involved. By sharing the GAL Report with an

unauthorized individual who was in a position to prevent Plaintiffs from receiving certain settlement funds, DCF violated the Order sealing the GAL Report (the "Seal Order") in precisely the way the Court had feared and sought to prevent.

DCF's violation is a bell that cannot be un-rung. It is also yet another systemic failure by DCF at Survivor's expense. Therefore, to prevent additional disclosure of sealed information, and to enforce compliance with the remaining terms of the Seal Order, DCF is hereby ordered to: (1) retrieve any and all copies of the sealed Guardian ad Litem's Report Regarding Partial Settlement in the possession of any individual or entity to whom DCF provided it without Court authorization; and (2) gather any and all copies of the same Report that remain in DCF's possession; (3) either destroy or return any and all copies of the Report to Plaintiffs; and (4) file proof of compliance within 60 days of this Order. Additionally, because the harm caused by DCF's contemptuous conduct cannot yet be quantified, but may be quantifiable in the near future, the Court reserves ruling as to compensatory sanctions.

I.   **FACTUAL & PROCEDURAL BACKGROUND**

This action arises out of the 2011 death of a child, the Victim, and the extreme physical and sexual abuse suffered by her and her siblings, including Survivor.[1] The state placed these children into the foster home of their abusers and later facilitated their ill-fated adoptions.[2] Survivor and the Victim's Estate (the Estate) sued DCF and two of its private contractors, Our Kids of Miami-Dade/Monroe, Inc. (Our Kids) and the Center for Family and Child Enrichment

---

[1] To protect whatever anonymity remains as to the minor Plaintiffs, and so that this Order may be available publically, the Court will not name the minors.

[2] Victim and Survivor's former adoptive parents await trial for Victim's murder and Survivor's attempted murder, among other related charges.

(the Center), in parallel state and federal suits.[3] In 2012 and 2013, the parties engaged in extensive settlement discussions under this Court's supervision, as well the supervision of Florida Circuit Court Judge Jorge E. Cueto. Finding Plaintiffs' significant needs paramount, this Court urged all parties to reach an appropriate and expeditious resolution in the best interest of the surviving children.

In December 2012, Our Kids and the Center requested Court approval of their confidential settlement agreement. Concerned about whether the proposed settlement amount would cover Plaintiffs' treatment needs, the Court appointed Charles H. Baumberger as Survivor's Guardian ad Litem.[4] Due to the content of Mr. Baumberger's February 2013 Report, and the Plaintiffs' status as minor victims of abuse, the GAL Report was sealed by Order of this Court (the "Seal Order"). [D.E. 175].

In June 2013, Plaintiffs and DCF entered into a written settlement agreement in the state court case before Judge Cueto. As part of DCF's settlement,[5] DCF agreed to pay Plaintiffs $1,250,000 immediately, and the parties agreed that Plaintiffs would seek, with DCF's support, an additional $3,750,000 from the Florida legislature.

Plaintiffs' two previous attempts to obtain the $3,750,000 from the Florida legislature have been unsuccessful. Thus, as of the date of this Order, Survivor and the Estate still await the full compensation contemplated in their settlement. This delay can be traced in part to the

---

[3] *See Survivor v. Florida Dep't of Children & Families*, Case No. 13:2715 (Fla. 11th Cir. Ct).

[4] Mr. Baumberger is a widely-respected complex personal injury lawyer who has graciously provided his expertise, pro bono, for over three years.

[5] Plaintiffs' settlement with DCF—unlike their settlement with Our Kids and the Center, which are private corporations—is a matter of public record. *See* Fla. Sen. Bill 48 (2016).

3

challenging process that Florida law and legislative practice requires of individuals who have

obtained a verdict against, or settlement with, a state agency.[6] The vehicle by which such

approval is given, known as a "claim bill," is an actual legislative enactment that must proceed

through Florida House and Senate committees and, ultimately, receive majority votes in both

chambers and the signature of the governor.

Plaintiffs contend an additional source of delay in their claim bills' passage can be traced

to DCF's deliberate attempts to undermine prior claim bills, in violation of their settlement

agreement. This contention has been fully addressed by Florida Circuit Judge Cueto, and it is not

within the authority of this Court to pass on that matter. Nonetheless, it is within this contentious

context that the Seal Order was violated and must be considered. Hence, in the midst of a third

attempt to pass a claim bill, DCF provided the sealed GAL Report to a Florida legislative staff

member who was reviewing the claim bill. Plaintiffs' counsel, upon learning that this

unauthorized disclosure occurred, moved for an order to show cause why DCF should not be

held in contempt.[7] This Court held a show cause hearing on October 27, 2015, and invited the

---

[6] Section 768.28, Florida Statutes, provides for a limited waiver of sovereign immunity in tort actions, rendering a sovereign entity immune from liability in excess of $200,000. That section further provides that any settlement or judgment in excess of that amount may only be paid from insurance coverage or by approval by the Florida Legislature pursuant to a claim bill. Fla. Stat. §768.28(5). Although DCF is entitled to this immunity and generally limited in its ability to pay settlements, in this case, DCF paid in excess of the statutory cap in order to settle the §1983 claims asserted against its employees, which are not subject to Section 768.28.

[7] Plaintiffs moved for an order to show cause regarding two disclosures by DCF to the same legislative staff member: 1) the GAL Report, and 2) an email from DCF's outside counsel, Bradley Silverman, to various employees at the Department of Financial Services and DCF, which divulged the confidential monetary value of the settlement between Our Kids, the Center, and Plaintiffs. While the creation and production of this email reflects a serious lapse of judgment and professionalism by the attorneys involved, the information contained in the email—unlike the GAL Report—was not under seal at the time it was sent; hence, it was not clearly and unambiguously included in the order to seal that followed. Its creation and dissemination therefore does not rise to the level of contempt.

4

parties to provide supplemental argument and evidence.[8]

At the October 27, 2015 hearing, DCF admitted to providing the sealed GAL Report to

the legislative staff member without Court authorization, but argued this disclosure did not

amount to contempt. DCF posited myriad, and often contradictory, arguments in its defense,

including: (1) this Court lacks jurisdiction to hold DCF in contempt pursuant to Eleventh

Amendment immunity; (2) the Seal Order was invalid; (3) the purpose behind the Seal Order

will not be vindicated by a finding of contempt; and (4) DCF could not comply with the Seal

Order because a) it was not aware of it, and b) even had DCF been aware of it, DCF had no

choice but to comply with a Florida statute that DCF believed mandated the disclosure. For the

reasons discussed below, DCF's arguments do not establish a defense. Thus, the Court holds

DCF in civil contempt for disclosing the sealed GAL Report to an unauthorized non-party.

## II.    **FINDINGS OF FACT**

The below findings of fact summarize the evidence the Court received during the October

27, 2015, show cause hearing[9] as well as the additional evidence contained in the record,

_____

[8] Plaintiffs filed a parallel motion for an order to show cause before Judge Cueto, who held an evidentiary hearing on November 13, 2015. This Court ordered Plaintiffs to file the transcript of Judge Cueto's hearing with the sealed supplemental evidence submitted in support of contempt in this case. Accordingly, this Court has reviewed the evidence in the state show cause hearing.

[9] The Court did not formally swear in the attorneys who testified at the show cause hearing.  Instead, the Court expressly relied on the duty of candor that obligates every officer of the court to speak truthfully. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994); *see Murray v. Playmaker Servs., LLC*, 548 F. Supp. 2d 1378, 1383 (S.D. Fla. 2008) ("As an officer of the court, every attorney has a duty to be candid".).  The testifying attorneys acknowledged at the show cause hearing that they were testifying as if under oath. [D.E. 307 P48]. In any event, a full evidentiary hearing was unnecessary in this case. "[W]hen there are no disputed factual matters that require an evidentiary hearing, the court might properly dispense with the hearing prior to finding the defendant in contempt and sanctioning him." *Mercer v. Mitchell*, 908 F.2d 763, 769 n.11 (11th Cir. 1990). Here, DCF did not dispute that it disclosed the GAL Report to the special master; the only factual disputes concerned whether DCF knew the Report was sealed, how the disclosure came about, and the implications of it. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Olympia Holding Corp.*, 140 F. App'x 860, 864 (11th Cir. 2005) (finding that the

5

provided by the Plaintiffs [D.E. 326[10]], or offered by DCF in its response in opposition [D.E. 348].

## A. THE GAL REPORT WAS ORDERED AND DOCKETED UNDER SEAL

This Court conditioned approval of Plaintiffs' December 2012 settlement with Our Kids and the Center on a satisfactory report from Survivor's Guardian ad Litem. In February 2013, the Guardian ad Litem prepared a Report regarding the proposed settlement with Our Kids and the Center. [D.E. 174]. The GAL Report described some of the tragic circumstances underlying this case, as well as long-term care concerns and certain financial terms of Plaintiffs' confidential settlement with Our Kids and the Center. *Id.*

Due to the sensitive and confidential nature of the information contained in the GAL Report, Plaintiffs' counsel sought to place this Report under seal. On February 15, 2013, Plaintiffs filed an unopposed motion to seal the GAL Report, and attached the GAL Report under seal. [D.E. 173-74]. Plaintiffs' motion was appropriately titled "Plaintiffs' Unopposed Motion to File Report of Guardian ad Litem Regarding Partial Settlement Under Seal." [D.E. 173]. On the first page, in the first paragraph, the motion to seal identified that it sought to have sealed, "the Report of the Guardian Ad-Litem Charles H. Baumberger." *Id.* On the second page, Plaintiffs referred to Local Rule 5.4, the title of which is "Filings under Seal; Disposal of Sealed Materials." [D.E. 173]. Plaintiffs then followed the procedures outlined in Local Rule 5.4 by,

---

district court did not abuse its discretion in failing to conduct an evidentiary hearing before holding defendants in contempt, where defendants challenged "the *interpretation* of the facts, but not the existence of the facts themselves").

[10] For the purposes of this Order, the Court refers to the exhibit numbers provided in Plaintiffs' notice of supplemental evidence, docket entry 326, the hard copy of which was provided under seal to Chambers. Therefore, docket entry 326-20 refers to exhibit 20, the entire transcript of the show cause hearing before Judge Cueto.

first, providing a reasonable basis to depart from the general policy of public filing, specifically, that "the Guardian Ad-Litem Report . . . contains highly confidential information and details about the abuse that Victim and Survivor suffered and Victim and Survivor were minors during the events so described." [D.E. 173]. Second, Plaintiffs generally described the contents of the document to be sealed, again specifying that that document was "the report of the Guardian ad Litem Charles Baumberger, which details some of the abuse suffered . . . and the Survivor's need for funds to obtain ongoing treatment in the future." *Id.* Finally, Plaintiffs requested "that the Guardian Ad-Litem Report be maintained under seal until the conclusion of this action at which time said Report will be returned to Plaintiffs or destroyed." *Id.* Plaintiffs certified that the motion was unopposed.

Given the content of the GAL Report and the well-established need to protect Plaintiffs' privacy to the greatest extent possible, it was understandable that no party objected to Plaintiffs' motion to seal. The Court found good cause and granted Plaintiffs' unopposed motion to file the GAL Report under seal. [D.E. 175]. The Court's Seal Order, signed February 19, 2013 and docketed February 20, 2013, ordered the GAL Report sealed from the date of the Order until the conclusion of the action, at which time the Report was to be returned to Plaintiffs or destroyed. *Id.* The Court sealed the Seal Order to provide additional protection to the GAL Report. The Seal Order states copies were provided to counsel of record as well as Mr. Baumberger.

### B. NOTICE OF THE SEAL ORDER TO PARTY-DEFENDANT DCF

The October 2012 Second Amended Complaint added DCF as a defendant to the federal case. [D.E. 102]. DCF outside counsel Bradley Silverman and Andrew Anthony entered notices of appearance in December 2012. [D.E. 134, 135]. Subsequently, a protective order was entered

for certain discovery materials. [D.E. 158]. Mr. Silverman, Mr. Anthony, and Mr. Ley-Soto received electronic notice of that Order. *Id.* Further, three sealed entries existed in this case prior to those at issue here [D.E. 3,4, 80], and DCF was also a defendant in several related state cases with sealed documents or entirely sealed dockets. Thus, DCF was a party to the federal court case at the time the GAL Report was ordered and filed under seal, and DCF was aware of the highly sensitive nature of the litigation at hand.[11]

Consistent with court practice, the sealed Seal Order was delivered via mail to counsel of record. Mr. Anthony and Mr. Silverman were DCF's counsel of record, and they, along with DCF's in-house regional counsel, Javier Ley-Soto,[12] were also listed as recipients of electronic filings at the time. It is clear that some counsel of record did receive the signed Seal Order in the mail. [D.E. 307 P45]. However, Mr. Silverman, Mr. Anthony, and Mr. Ley-Soto each deny having received the signed Seal Order. [D.E. 307 P39, 44-45, 49].

Because DCF denies receiving the Seal Order, some discussion of what information regarding sealing was available to DCF is necessary. On February 15, 2013, Plaintiffs' counsel emailed the GAL Report, their unopposed motion to seal the GAL Report, and a coversheet indicating a filing under seal to DCF's outside counsel, Mr. Silverman. [D.E. 326-3]. Plaintiffs' counsel specifically referred to the relief sought as a "Motion to File Guardian ad Litem Report **Under Seal.**" *Id.* (emphasis added). The subject line of Plaintiffs' counsel's email was "Survivor v. Our Kids, et al., - **Motion to File Under Seal - GAL Report.**" *Id.* (emphasis added). There is no dispute that DCF's outside counsel Mr. Silverman received this email from Plaintiffs'

---

[11] DCF's pending motion to dismiss for lack of jurisdiction [D.E. 151], does not change the analysis as to whether DCF was a party to the Seal Order.

[12] Mr. Ley-Soto is also admitted to practice before this Court and testified that he was intimately involved with this case since the DCF investigation that followed Victim's death. [D.E. 307 P41-42].

counsel. There is also no dispute DCF did not oppose Plaintiffs' motion.

In addition, the public docket entry immediately preceding the sealed documents at issue is a paperless Order dated February 11, 2013, granting an extension for the Guardian ad Litem to file his Report until February 18, 2013. [D.E. 172; 348 P61].  Mr. Anthony, Mr. Silverman, and Mr. Ley-Soto received electronic notice of this entry. [D.E. 172]. The three entries immediately following the paperless Order are a "restricted/sealed" motion and a "restricted/sealed" miscellaneous document, both entered February 15, 2013, and a "restricted/sealed" order, on February 20, 2013. *Id.* These entries correspond with the sealed unopposed motion to file the GAL Report under seal, the sealed GAL Report, and the sealed Seal Order. As of September 1, 2015, there were approximately thirty sealed docket entries.

### C.  DCF COUNSEL'S HANDLING OF THE GAL REPORT

Shortly after receiving the GAL Report as an attachment to the February 15, 2013 email from Plaintiffs' counsel, Mr. Silverman printed the GAL Report and the sealed document tracking form and placed them in a paper file. [D.E. 307 P49:13–15]. On February 20, 2013, Silverman's co-counsel, Mr. Anthony, pulled the GAL Report from its paper file, scanned it, and attached it to an email he drafted to the Department of Financial Services ("DFS") regarding the case. [D.E. 307 P38-40; 49-50; 96-97; D.E. 326-5]. Mr. Anthony did not attach the sealed document tracking form or tell DFS that the GAL Report was or may be sealed. [D.E. 307 P36-38, 45, 48-52]. Later that same day, one of the four recipients of this email, Ray Williams, DFS' Chief of State Liability and Property Claims, forwarded it to three DCF employees. *Id.* The GAL Report was attached to Mr. Williams' email to DCF.  *Id.*

9

### D.  2015 CLAIM BILL REFERRED TO SPECIAL MASTERS

In 2015, Plaintiffs submitted a claim bill to the Florida Legislature for the third year in a row. DCF, pursuant to the settlement agreement and Judge Cueto's February 2015 order requiring the same, provided an unqualified letter of support to the Florida Legislature. [D.E. 326-11, 12]. For the first time, a claim bill hearing was set in front of the Florida House and Senate "special masters," on October 30, 2015. Special masters are legislative staffers who review the facts underlying each claim bill and prepare a report for the legislators who will, ultimately, approve or disapprove of them.[13] [D.E. 307 P24].

On September 9, 2015, the House special master, Parker Aziz, sent a letter to DCF and Plaintiffs setting forth the procedure for the claim bill hearing. [D.E. 326-13]. Aziz's letter introduced Tom Cibula as the Senate special master from the Senate Committee on the Judiciary, and specified that "[e]x-parte communications with the special master are prohibited." *Id.* Aziz's letter was addressed to Plaintiffs' counsel Neil Roth, DCF General Counsel Rebecca Kapusta and DCF Assistant General Counsel Rhonda D. Morris. *Id.* Copied on the letter were Tom Cibula and DCF's outside counsel, Mr. Silverman and Mr. Anthony. *Id.*

### E.  DCF PROVIDES THE GAL REPORT TO SENATE SPECIAL MASTER[14]

On September 10, 2015, Senate special master Tom Cibula sent an ex parte email to the Department of Children and Families, requesting records of the confidential settlement between

---

[13] The legislature describes the role of the special masters as follows: "The Special Masters of each house conduct a joint hearing to determine liability, proximate cause, and damages . . . . The Special Master . . . prepares a final report containing findings of fact, conclusions of law, and recommendations. Special Masters are not bound by jury verdicts or stipulations entered into by the parties[.]"  LEGISLATIVE CLAIM BILL MANUAL.

[14] Unless otherwise stated, the factual findings in this section are based on the testimony obtained by Judge Cueto, admissible as (sworn) party-opponent statements. Fed. R. Evid. 801(d)(2). [D.E. 326-20].

10

Plaintiffs, Our Kids, and the Center. Mr. Cibula identified himself as the Staff Director for the Senate Judiciary Committee; he did not divulge his dual role as the Senate special master for the pending claim bill.[15] Upon receiving the records request from Mr. Cibula, DCF Deputy Counsel John Jackson assigned it to DCF Assistant General Counsel Jeffrey Richardson.

Mr. Richardson discussed Mr. Cibula's request with DCF Regional Counsel Javier Ley-Soto and Assistant General Counsel Rhonda Morris. Though Ms. Morris was aware of Mr. Cibula's role as the Senate special master, and of the prohibition against ex parte communication between DCF, as a party to the claim bill, and the special masters, Ms. Morris did not mention either fact to Mr. Richardson. With the assistance of Mr. Ley-Soto and Ms. Morris, Mr. Richardson determined DCF did not have the settlement records requested. When Mr. Richardson told this to Mr. Cibula, Mr. Cibula made a second request: this time he asked for copies of any communications between DFS and DCF regarding the settlements.

Over the next few weeks, Mr. Richardson located 6,500 documents responsive to Mr. Cibula's second request. Two of those documents included emails from DCF's outside counsel. The first, an email from Mr. Silverman on January 16, 2013, included the monetary value of the confidential settlement between Our Kids, the Center, and Plaintiffs. [D.E. 326-4]. The second was an email from Mr. Anthony, sent on February 20, 2013, to DFS, to which the GAL Report was attached.

Mr. Richardson rightfully recognized that some (if not most) of these documents were confidential and or exempt from public disclosure under Florida law.[16] Apparently in response to confidentiality concerns voiced by Mr. Richardson, Mr. Cibula provided Mr. Richardson with

---

[15] His name and address remained the same, however. [D.E. 326-13, 20].

Florida Statutes Section 11.143, which provides in relevant part:

(1) Each standing or select committee, or subcommittee thereof, is authorized to . . . maintain a continuous review of the work of the state agencies concerned with its subject area and the performance of the functions of government within each such subject area and for this purpose to request reports from time to time, in such form as the committee designates, concerning the operation of any state agency and presenting any proposal or recommendation such agency may have with regard to existing laws or proposed legislation in its subject area.

(2) In order to carry out its duties, each such committee is empowered with the right and authority to inspect and investigate the books, records, papers, documents, data, operation, and physical plant of any public agency in this state, including any confidential information.

Mr. Richardson discussed Mr. Cibula's records request with his supervisor, Mr. Jackson, and with Mr. Ley-Soto. Upon reviewing Section 11.143, along with Florida Statutes Section 11.0431, which purports to maintain the confidentiality and or exempt status of documents disclosed to the Legislature pursuant to Section 11.143, in-house counsel determined disclosure of the requested records was mandated, and "there was nothing else to be concerned about."[17] Thus, between September 23, 2015 and October 7, 2015, Mr. Richardson disclosed approximately 6,500 unredacted pages of settlement-related communications to Mr. Cibula. [D.E. 326-19, 20]. Among these documents were Mr. Silverman's January 16, 2013 email and the GAL Report.

Prior to the disclosure, Mr. Richardson knew that the GAL Report was part of federal litigation and that a related claim bill was pending. He also knew that other parties' counsel had refused Mr. Cibula's requests, citing, in part, the need for court approval before providing the

---

[16] *See, e.g.*, Fla. Stat. § 39.202(1) ("[A]ll records held by the department concerning reports of child abandonment, abuse, or neglect . . . shall be confidential and exempt from the provisions of s. 119.07(1)); Fla. Stat. § 119.071(2)(h)(1)(a), (j)(1) (exempting information identifying victims of child abuse from Florida's public records law); Fla. Stat. § 744.3701 ("A court record relating to the settlement of a . . . minor's claim, including . . . **a report of a Guardian ad Litem relating to a pending settlement** . . . is confidential and exempt" from Florida's public records law.) (emphasis added).

[17] Testimony of DCF Deputy General Counsel John Jackson. [D.E. 326-20, P287]

information requested. [D.E. 326-15 P5]. Mr. Richardson's colleagues, however, did not tell him that Mr. Cibula was the Senate special master, or that ex parte communication with the Senate special master was prohibited.[18] He was also not aware that the GAL Report was sealed. Indeed, not only Mr. Richardson, but also Ms. Morris, Mr. Jackson, and Mr. Ley-Soto disclaimed any knowledge of this Court's Seal Order.

Further, even though in-house counsel knew that Mr. Silverman and Mr. Anthony represented DCF in the litigation and the claim bill related to Mr. Cibula's request, they did not confer with outside counsel.[19] Nor did they contact Plaintiffs' counsel, or this Court, or any of the litigants involved in this case. There is also no evidence that in-house counsel checked the federal docket.[20]

## F. PLAINTIFFS' COUNSEL DISCOVERS DISCLOSURE AND MOVES TO SHOW CAUSE

On or about October 19, 2015, Plaintiffs' counsel, DCF, and Mr. Cibula took part in a conference call in preparation for the claim bill hearing. [D.E. 326-14]. In that conference call, and a follow-up email from Mr. Cibula to the parties, Mr. Cibula questioned how Plaintiffs intended to assure the Legislature that they were not seeking "double recovery," without

---

[18] Ms. Morris testified that she was aware of Mr. Cibula's records request, she was aware Mr. Cibula was the Senate special master, and she was aware of the prohibition against ex parte communications. However, she simply did not think to share this information with Mr. Richardson. Further, Ms. Morris testified she does not believe Mr. Cibula's record request constituted ex parte communication.

[19] That is, until *after* the disclosure.

[20] Despite this lack of evidence, DCF makes much of the fact that the publicly available docket does not contain an entry for the GAL Report or the Seal Order. Unfortunately, this hurts, rather than helps, DCF's position. If any of the several DCF attorneys involved had viewed the publicly available docket prior to disclosing the GAL Report, they would have noticed dozens of untitled sealed or restricted entries, and that the GAL Report at issue is not visible. From this, only two logical conclusions would are available: either the GAL report was not filed, or it is sealed or otherwise restricted. In neither scenario is the GAL Report a public document. *See* Local Rule 5.4.

providing the Senate special master with the settlement amount between Plaintiffs, Our Kids, and the Center. *Id.* Mr. Cibula also, somewhat paradoxically, sought to confirm the settlement amounts contained in two documents he said he received from DCF in response to a public records request: the GAL Report, and the January 16, 2013 email from Bradley Silverman to DFS and DCF. *Id.* Plaintiffs' counsel, upon realizing that DCF had provided sealed and confidential documents to Mr. Cibula, moved for the instant order to show cause why DCF should not be held in contempt.

## III.   <u>CONCLUSIONS OF LAW</u>

The Court has the inherent power to sanction DCF for violating the Seal Order. *See Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002). Clear and convincing evidence establishes that DCF violated the Seal Order and that (1) the Order was valid and lawful; (2) the Order was clear and unambiguous; and (3) DCF had the ability to comply. *See F.T.C. v. Leshin*, 618 F.3d 1221, 1232 (11th Cir. 2010) (noting Eleventh Circuit standard). The subjective belief or willfulness of the contemnor is irrelevant to civil contempt. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Olympia Holding Corp.*, 140 F. App'x 860, 863 (11th Cir. 2005).

This Court entered an Order stating that the GAL Report "shall be maintained under seal." [D.E. 175]. It is undisputed that DCF provided the GAL Report to the Senate special master, a non-party, without judicial authorization. Neither Eleventh Amendment immunity, nor ignorance of individual employees, nor a purported state statutory duty, excuse DCF from disobeying a federal court's explicit order. *See* U.S. CONST. art. VI, cl. 2. DCF cannot justify its noncompliance and is therefore in contempt.

14

## A.  THE SEAL ORDER WAS VALID AND LAWFUL

DCF does not dispute the Court's authority to issue seal orders or to hold a party in contempt for violating them.[21] Nor is the Court's jurisdiction over this §1983 litigation at issue. DCF instead challenges (1) the Court's authority to enforce a violation of its Seal Order as to DCF, in light of the DCF's purported Eleventh Amendment immunity and (2) the validity of the Seal Order, in light of alleged non-compliance with Local Rules by Plaintiffs' counsel, in their motion to seal the GAL Report. Both arguments are meritless collateral attacks.

### 1.   *The Eleventh Amendment does not immunize DCF from sanctions for violating the Seal Order.*

As to DCF's Eleventh Amendment argument, if DCF believed that this Court lacked the constitutional power to enter an order binding DCF to keep the GAL Report sealed, then DCF should have raised that argument when DCF received the motion to seal the GAL Report. DCF, however, never opposed Plaintiffs' motion. Having now violated the resulting Seal Order, DCF may not re-litigate its enforceability. *See United States v. Rylander*, 460 U.S. 752, 756 (1983) ("It would be a disservice to law if we were to depart from the longstanding rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and then become a retrial of the original controversy.").

Although DCF had a pending filed a motion to dismiss on Eleventh Amendment grounds, the instant controversy is not a suit against DCF. It is a contempt proceeding based on DCF's violation of a federal court's order protecting the confidentiality of documents central to a federal

---

[21] Indeed, courts routinely find parties and their attorneys in contempt for similarly violating an order sealing or protecting sensitive documents from disclosure. *See McDonald v. Cooper Tire & Rubber Co.*, 186 F. App'x 930, 932 (11th Cir. 2006) (affirming sanction imposed on attorney who admitted to providing a deposition transcript protected by court order to "unauthorized persons"); *U.S. ex rel. Bibby v. Wells Fargo Home Mortg., Inc.*, 76 F. Supp. 3d 1399, 1414–15 (N.D. Ga. 2015) (imposing sanction on *qui tam* relators for violating the statutory seal requirements of the False Claims Act).

case to which DCF was a party. The Eleventh Amendment *does not* preclude jurisdiction over claims based on state officials' violation of federal law. *Ex Parte Young*, 209 U.S. 123, 155–56 (1908); *Ocean v. Kearney*, 123 F. Supp. 2d 618, 621 (S.D. Fla. 2000). Nor does DCF's Eleventh Amendment immunity from suit protect it from being sanctioned with coercive or compensatory fines.[22]

Finally, even if the Court were to find that the Eleventh Amendment was somehow implicated by this contempt proceeding, DCF has waived immunity as to this Court's capacity to enforce the Seal Order. *See Hill v. Blind Inds. & Srvs. of Maryland*, 179 F.3d 754, 759 (9th Cir. 1999) (noting Eleventh Amendment immunity waived when "the state's conduct during the litigation clearly manifests acceptance of the federal court's jurisdiction or is otherwise incompatible with an assertion of Eleventh Amendment immunity."). While it was a participant, albeit an unwilling one, in this litigation, DCF *requested* the information contained in the GAL Report as a condition of its settlement with Plaintiffs. Through this request, DCF voluntarily and affirmatively sought a benefit, *i.e.*, knowledge of the details of Plaintiffs' settlement with Our Kids and the Center, that could only be derived by participating in this litigation. In so doing, DCF consented, at a minimum, to this Court's authority to control its own proceedings by entering an order to seal that information.

   2. *Alleged noncompliance with Local Rules by Plaintiffs' Counsel does not invalidate the Seal Order or establish DCF's inability to comply.*

DCF also attempts to collaterally attack the Seal Order with post-hoc arguments that

---

[22] DCF cited *In re Diaz*, 647 F.3d 1073, 1082 (11th Cir. 2011) in the evidentiary hearing.  In that case, at issue was the bankruptcy court's exercise of jurisdiction over state agencies that had allegedly violated its automatic stay and discharge injunction but were never specifically in front of the court as parties to an action. Even so, the Court found that it had jurisdiction to hold the agencies in contempt for violating the discharge injunction. *Id.* In contrast, DCF was a party when the Court entered its Seal Order.

Plaintiffs did not comply with Local Rules 5.4 and 7.1 in their motion to seal the GAL Report,

and DCF never would have agreed to seal the GAL Report had it known Plaintiffs sought to keep

the confidential settlement amount under seal. DCF not only fails to establish Plaintiffs'

noncompliance, but also fails to offer any legal authority to support its contention that the alleged

noncompliance with Local Rules, if proven, would automatically invalidate the Seal Order.[23] In

addition, if DCF had any basis to oppose sealing any portion of the GAL Report—including

Plaintiffs' alleged non-compliance with the Local Rules or a belief that DCF could not agree to

keep the private settlement amount under seal—DCF has long since waived that opposition.

Moreover, the Court would have sealed the GAL Report even had DCF objected, and

even if only to keep the settlement amount sealed. Plaintiffs are minor victims of severe child

abuse, including sexual abuse, the effects of which will follow them throughout their lives. It is

true that their names have been published and the amount of their DCF settlement is public under

Florida law. However, these children should not have to endure public discussion regarding

whether they are over-compensated, not the least because that is impossible given the facts. The

lawyers involved in this litigation have the responsibility to prevent Plaintiffs' further

victimization by safeguarding their privacy and dignity whenever possible. This includes

ensuring Plaintiffs receive the benefit of modest settlement agreements and keeping private

---

[23] DCF does cite *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985), in support of the contention that Plaintiffs' purported misrepresentation of the basis for the motion to seal invalidates the Seal Order. *Wilson* is distinguishable for several reasons, the most striking of which is that the plaintiff in *Wilson* filed what DCF should have filed when they apparently found themselves "between a rock and a hard place": a motion to unseal. Here, rather than moving to unseal the GAL Report or otherwise requesting permission to share sealed material with a non-party, DCF unilaterally authorized itself to violate the Seal Order. Further, not only were Plaintiffs' bases for the Seal Order more substantial than those in *Wilson*, but the sealing order in *Wilson* was subject to a stricter standard because the entire record (as opposed to select documents) was sealed. *See Chicago Tribune Co. v. Bridgestone/Firestone*, 263 F.3d 1304, 1311 (11th Cir. 2001) (holding compelling interest standard of *Wilson* only applies where entire record sealed).

settlements private.

The Court has jurisdiction over the proceedings at issue and over any party with access to the sealed filings therein. There was good cause to seal the GAL Report. Plaintiffs have established the validity and lawfulness of the Seal Order. Nothing DCF has offered in response undermines that finding or establishes the impossibility of DCF's compliance.

## B.  THE SEAL ORDER WAS CLEAR AND UNAMBIGUOUS

DCF does not contest the second requirement—that the Seal Order is clear and unambiguous. In the one-page Seal Order, titled "Order Granting Motion to File Report Under Seal," the Court specifies two times both the docket entry number and the title of the motion it is granting, namely "Plaintiffs' Unopposed Motion to File Report of Guardian ad Litem Regarding Partial Settlement Under Seal." [D.E. 175]. It also unequivocally states that "the Report of Guardian ad Litem Regarding Partial Settlement . . . shall be deemed filed under seal as of the date of this Order. These documents shall be maintained under seal until the conclusion of this action, at which time the documents will be returned to Plaintiffs or destroyed." *Id.* The Seal Order was signed and dated and noted copies were sent to all counsel of record. *Id.*[24]

## C.  DCF HAD THE ABILITY TO COMPLY WITH THE SEAL ORDER AND CANNOT JUSTIFY ITS NONCOMPLIANCE

DCF does not dispute that its agents or employees provided the GAL Report to the Senate special master in violation of the Seal Order. Instead, DCF argues it could not comply with the Seal Order because DCF was ignorant of its duty to keep the GAL Report under seal and that the transmission of the GAL Report was harmless, or required pursuant to Florida law, or does not violate the spirit of the Court's Seal Order because the GAL Report remains

---

[24] The Seal Order mostly speaks for itself, but its clarity is heightened by Plaintiffs' underlying motion to seal, which DCF indisputably received and did not oppose.

confidential in the Senate special master's hands.  For the reasons discussed below, these arguments fail.

> 1. *Certain DCF employees' ignorance of the Seal Order does not establish DCF's inability to comply.*

DCF maintains it should not be held to account for violating this Court's Order because the individual in-house counsel responsible for the disclosure did not know the GAL Report was subject to the Seal Order. [D.E. 307 P59]. However, actual notice of the Seal Order to the individual DCF employees responsible for the disclosure is not required. *See Landmark Legal Found. v. E.P.A.*, 272 F. Supp. 2d 70, 82–83 (D.D.C. 2003) ("To find contempt, it need not be proven that a party to an order had actual notice of that order."). DCF was a party to the litigation at the time the Seal Order was entered. Its agent, counsel handling the litigation, received actual notice of, at the very least, a pending, unopposed motion to seal the GAL Report and a Southern District of Florida sealed document tracking form.

Given that DCF agreed to the filing of the document under seal, its claim of ignorance that the GAL Report was ultimately sealed rings hollow. Attorneys—and the parties they represent—cannot be allowed to maintain deliberate ignorance of an order to avoid contempt. *Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.*, 646 F.2d 800, 808–09 (2d Cir. 1981). Mr. Silverman knew there was a pending motion to seal the GAL Report, and he entered no opposition to the motion. He was aware of the Court's and parties' concerted efforts to shield the abused minor Plaintiffs from further victimization. He was aware those efforts included preventing disclosure of the type of information contained in the GAL Report. Even if it is true that Mr. Silverman never received the Seal Order, if he had any doubt as to whether the Court granted the unopposed motion to seal a Report containing health and financial information

19

pertinent to the private settlement, he was obligated to keep his client informed and follow up with the Court. *Id.* That outside counsel apparently never took any steps to confirm that the unopposed motion to seal the GAL Report was granted clearly indicates they had no doubt that it was, in fact, ordered to be maintained under seal.

Under established agency and attorney-client principles, Mr. Silverman's knowledge that the GAL Report was filed under seal is imputed to his client, DCF. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962) ("[E]ach party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney."); *First Alabama Bank of Montgomery, N.A. v. First State Ins. Co.*, 899 F.2d 1045, 1060 (11th Cir. 1990) ("[T]he general rule is that a principal is chargeable with and bound by the knowledge of his agent while acting within the scope of his authority.").

DCF, as a sophisticated litigant, is also presumed to have known that the GAL Report was sealed. *See Vinewood Capital, LLC v. Sheppard Mullin Richter & Hampton, LLP*, 735 F. Supp. 2d 503, 518 (N.D. Tex. 2010) (rejecting client's claim that it was unaware of a development in a case). Further, the DCF employees who are responsible for the improper transmission of the GAL Report to the Senate special master are all attorneys. Attorneys licensed to practice before this Court are charged with familiarity with the Local Rules. Local Rule 5.4(e) provides that "[i]f the Court denies [a] motion to seal, the proposed filing **shall not be made public** and shall be deleted from the docket by the Clerk's office." *Id.* (emphasis added). Thus, attorneys—such as outside counsel or in-house counsel Mr. Ley-Soto—looking at the docket would see that the GAL Report and Seal Order are not publicly available. Moreover, the docket displays dozens of sealed entries. At the very least, viewing the docket would have put DCF on

20

notice that the GAL Report is not public, and that, given the unopposed motion to seal the GAL Report, it was among the sealed documents.

Despite numerous flags—including the unopposed motion to seal, Florida records law exempting all GAL reports from disclosure, and other parties' counsel refusing to respond to Mr. Cibula's requests—DCF in-house counsel opted not check the docket, communicate with outside counsel, consider the Local Rules, or contact the Court before releasing the GAL Report. DCF, therefore, has itself to blame for its employees' purported ignorance of the Seal Order. Thus, under the circumstances of this case, DCF cannot rely on lack of notice or knowledge to justify its noncompliance.[25] Irrespective of individual employees' ignorance that the GAL Report was sealed, DCF had the ability to comply with the Seal Order.

   2. *The special masters' supposed duty of confidentiality does not excuse DCF's violation of the Seal Order.*

DCF additionally asserts that because the special masters have an obligation to keep documents confidential, DCF did not violate the Seal Order in turning the GAL Report over to the Senate special master. At the hearing, DCF's counsel argued that the "intent and spirit" of the Seal Order has not been violated because "the Legislature will continue to maintain th[e] confidentiality and seal [of the GAL Report]." [D.E. 307 P78, 81]. This defense evinces a fundamental misapprehension of the nature of the Court's Seal Order.

There is a difference between a document that is merely confidential and one that is sealed by a federal court order. Once a court orders a document to remain sealed, parties must

_____

[25] *See United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980) (noting exception to inability defense where alleged contemnor responsible for inability to comply); *see also Commodity Futures Trading Commn. v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992) ("In order to succeed on the inability defense, the alleged contemnor must go beyond a mere assertion of inability . . . and establish that he has made in good faith all reasonable efforts to meet the terms of the court order he is seeking to avoid.") (internal citations omitted).

seek the Court's permission to disclose the sealed material to any non-party. If DCF were able to disclose the sealed GAL Report to whichever state government staff member it unilaterally deemed entitled to view it, the Court's Seal Order would be a nullity. *See Grove Fresh Distributors, Inc. v. John Labatt Ltd.*, 888 F. Supp. 1427, 1438–39 (N.D. Ill. 1995) (rejecting interpretation of orders as requiring "nothing more than regulating the public's access to the physical items on file at the clerk's office," where that interpretation would "render the sealing order a nullity").

For this same reason, the argument that holding DCF in contempt would not vindicate the purpose of the Seal Order, fails. The purpose of the Seal Order was, in part, to protect the minor Plaintiffs from being targeted for further victimization. This victimization includes subjecting these children to criticism from non-parties in a position of influence, who may incorrectly determine Plaintiffs are somehow undeserving of full financial compensation. Further, the Court has no assurance that the disclosure of the GAL Report ended with the Senate special master. The Court has no way of knowing how far this sensitive information may now have spread and what injury may come of it. This is precisely the result that the Court sought to avoid by sealing this document and the result the Court attempts to curtail through this Order.[26]

3.   *The Florida statutes on legislative oversight of agencies do not excuse DCF's violation of the Seal Order.*

Finally, DCF argues that it was obligated to comply with the Senate special master's request under Florida Statutes, Chapter 11, which require state agencies to cooperate with legislative oversight. This Court shares Judge Cueto's skepticism of the applicability of these

_____

[26] DCF's additional, and confusing, argument that perhaps the GAL Report is actually now a public document only serves to highlight the necessity of vindication.

statutory provisions to the matter at hand.[27] Even assuming these provisions of Florida law did

obligate DCF to cooperate with the Senate special master by providing the requested documents,

DCF was, at best "between a rock and a hard place" due to two conflicting legal obligations—

one to the Senate special master, and the other to this Court. Litigants cannot resort to "self-help"

by ignoring one of two competing obligations, *Halderman v. Pennhurst State Sch. & Hosp.*, 673

F.2d 628, 637–38 (3d Cir. 1982), nor can they unilaterally reject federal court orders to the extent

the litigants independently determine they conflict with other laws. *United States v. Bank of*

*Nova Scotia*, 691 F.2d 1384 (11th Cir. 1982). Before disclosing the sealed GAL Report to a non-

party, DCF was obligated to request judicial authorization. DCF did not do so, thus, DCF is in

contempt.

## IV.  CONCLUSION

Clear and convincing evidence establishes DCF's violation of a valid, lawful, clear, and

unambiguous Order of the Court. DCF has not justified its noncompliance. However, there

remains the question of whether contempt is a wise exercise of judicial discretion.

From its inception, the Court urged the lawyers involved in this case to focus exclusively

on rectifying the unspeakable horrors committed against the child Victim and her surviving

siblings. The lawyers were asked to work together, quickly, and in earnest, to create an

agreement that would not require Survivor to re-live the severe abuse he endured and witnessed.

In addition, the Court and parties recognized that the needs of these child victims are significant,

---

[27] These statutes involve legislative oversight of agencies by "standing or select committees." Fla. Stat. §11.143. The Senate special master did not appear to be acting as a committee member when he requested information on the settlement from DCF. Rather, he appears to have been acting as a special master, a quasi-judicial role that does not fit under the purview of Chapter 11.

pressing, and long-term. With the assistance of hard-working counsel and pro bono guardians ad litem, the parties quickly arrived at settlement agreements which met court approval.[28]

DCF is indisputably aware that this Court issued dozens of seal orders as part of an effort to prevent the re-victimization of Survivor and his siblings. DCF's position that it had no choice but to turn over a document sealed by federal court order to a legislative staff member, who was likely not entitled to it even under state law, is not only irresponsible, but dangerous. It is dangerous to the child victims here, and to the thousands of vulnerable children, elderly, poor, mentally ill, and intellectually disabled Florida residents that DCF is charged with protecting.

By violating the Seal Order, DCF ignored the Court and all other counsel's extensive efforts to afford the strongest possible protection from disclosure of information that could possibly be used to re-victimize Survivor and his siblings. DCF further shared that information with an individual who had the power to prevent Survivor from receiving the full compensation that everyone involved in this case from its inception agreed was just and necessary. If the horrific facts of this notorious case, DCF's facilitating role therein, and a federal court order, are insufficient motivation to redirect DCF to its exclusive duty to protect these children from further harm, then contempt is not only warranted, it is imperative.

---

[28] These settlement amounts were far less than what a jury would have awarded. While modest given the extreme facts, the amounts appear sufficient to provide for the long-term treatment needs of the surviving children. Anyone who doubts the worthiness of these children to their full negotiated financial settlement, or the strength of the evidence against DCF and its contractors, need only review the Lawrence Report. [D.E. 326-1].

For the reasons discussed above, and in light of need to discuss the content of two previously sealed documents in this Order, it is hereby

      ORDERED that

1) DCF is held in contempt of Court for violating the Seal Order. [D.E. 175].

2) DCF shall file detailed proof of its compliance with the following provisions, **within 60 days of this Order**:

    a. retrieve any and all copies of the sealed Guardian ad Litem's Report Regarding Partial Settlement in the possession of any individual or entity to whom DCF provided it without Court permission;  and

    b. collect any and all copies of the GAL Report that remain in DCF's possession; and

    c. either destroy or return any and all copies of the Report to Plaintiffs.

3) The Court reserves ruling as to compensatory sanctions because the harm caused by DCF's contemptuous conduct cannot yet be quantified, but may be quantifiable in the near future.

4) THE CLERK OF THE COURT is authorized and directed to UNSEAL the Court's Seal Order [D.E. 175] and Plaintiffs' unopposed motion to seal the GAL Report [D.E. 173].

5) The GAL Report [D.E. 174] remains SEALED until the conclusion of this action, at which point it must be returned to Plaintiffs or destroyed.

6) DCF's Motion Objecting to Jurisdiction and the Order to Show Cause and for an Order Dismissing the Motion for Contempt for Lack of Jurisdiction [D.E. 293] is DENIED.

    DONE and ORDERED in Miami, Florida this 7 day of March 2016.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

CC: Counsel of Record

25